THE TIOGA MANUFACTURING COMPANY v. THOMAS D. STIMSON.

| 48 | 213 |
|----|-----|
| 149 | ³ 13 |

*Indebitatus assumpsit—Mutual settlements—Private account books.*

Where parties have agreed to run their logs in a common mass and to supply each his share of the expense thereof for the joint benefit, and one of them fails to do so and the other supplies the deficiency, the latter may perhaps have a right of action against him for damages, of which the cost of the extra labor supplied by him may be the criterion, but he has no right of action against him on the common counts so long as there was no agreement that he should make good the deficiency and so long as the cost of the extra labor remains unliquidated.

Where parties meet to adjust their mutual accounts in a settlement that shall cover all claims, and one of them withdraws, while some accounts remain unsettled, and refuses to go farther, the whole settlement is defeated and an action on the common counts will not lie to recover upon such items as had been agreed to.

A bill of particulars cannot be rendered competent evidence by the introduction of private account books to sustain its charges.

Error to Mecosta. Submitted Jan. 20. Decided Apr. 25.

ASSUMPSIT. Defendant brings error. Reversed.

*Norris & Uhl* for appellant.

*Hughes, O'Brien & Smiley* for appellee.

GRAVES, C. J. The corporation having sued and recovered on the common counts the defendant below asks a review upon writ of error and bill of exceptions.

According to the plaintiff's theory of the action what was demanded consisted of two classes of items, the first arising as follows: Both parties were engaged in manufacturing lumber at Big Rapids,—running mills for that purpose; and in the course of their business considerable exchanges of lumber had occurred between them, of which a running account had been kept, extending from December, 1871, to 1878. This account included a few items besides lumber.

The second class arose in this manner: In the spring of 1872 each party had a large quantity of logs in the west branch of the Muskegon river, and wishing to run them out to the main stream, they agreed to join and run them out in a common mass by joint efforts, each party furnishing his due share of the required labor, implements and provisions, such share to be in proportion to the quantity to be run down for each, and in case of its turning out on final settlement that one had exceeded his proportion, the other in that case should make it up by payment. The corporation did supply more than its quota under the contract, which on investigation by the parties was found to be $875.

Such is in substance the construction of the case as stated by the counsel for the corporation. Whether on this explanation a portion of the claim would not be unrecoverable on the common counts is a question not presently important. Neither is it now material to consider the conflicting evidence adduced by Stimson.

The first subject of inquiry is whether the judgment can be defended on the circumstances brought out to obtain it, and on recurring to those circumstances the first matter which challenges attention is whether in the evidence for the corporation there was any tendency to prove that the parties completed an adjustment of their operations relative

to running the logs under the contract, and struck a balance in favor of the corporation which Stimson undertook to pay, and whether on the showing by the corporation itself in regard to the running of the logs and the contract therefor and the incidents relating thereto any case was developed making Stimson liable under the common counts.

Waiving questions on evidence the case made by the corporation on this part of the litigation is open to no doubt. It is that the parties made an express contract to unite in running down their respective logs in a common mass to the main river and that each should furnish in labor and necessaries a given portion of the quantity needed for the whole operation; but it was not made a condition that if one failed to provide his full quota the other should be bound to supply the deficiency and charge it over; that the logs were run to the main river under this agreement, but that Stimson failed to provide his full share of labor and necessaries thereunder and therefore failed to perform to the full extent his share of the contract, and that the corporation kept the business going by at once supplying the deficiency caused by Stimson's non-performance; that differences arose thereafter in regard to this and other transactions having reference to the running down the main river and to lumber exchanges, and the parties met to adjust and close up all subjects of dispute between them; that they proceeded to liquidate one after another of their mutual claims until reaching one made by Stimson of $500 for running the logs of the corporation down the main river, and this the corporation utterly rejected.    They had gone over the lumber exchange business and the transactions relative to the drive to the main river, but had not considered all the subjects involved.

This claim of Stimson's now introduced remained to be disposed of.    The parley had proceeded on the faith that whatever adjustment, if any should be made, should cover all claims, and that no matter or question brought under consideration should be deemed settled if any one in the series was the subject of disagreement and should be left

unadjusted. The purpose was not to pick out this or that claim or item and agree upon it and leave others unsettled. On the contrary the consultation had for its object the settlement of all matters as an entire arrangement and producing a single and definite result. And when the corporation refused to consider this claim of $500 Stimson at once drew back and announced that the controversy would have to be settled by arbitration. He was still in a situation to withdraw. As yet the whole business was open. The parties had not passed the stage of trying to agree, and the failure on the claim of $500 involved the whole parley in failure.

Now it is not difficult to see that the theory of the action was not sustained and that on the showing of the corporation itself there was no basis for recovery under the common counts for anything which may have been provided by the corporation under the special contract or to secure its being carried out.

Accepting the version given on its behalf, and that submitted on the other side is less favorable to the judgment, the rights of the parties relative to the outlay for running the logs must depend on the express contract. Each agreed with the other to contribute a certain quantity of labor and necessaries to accomplish a common enterprise, and the complaint in effect is that one kept the contract while the other broke it by failing to furnish his share. Assuming this to have been so it would have entitled the party not in fault to sue on the contract for the damage to him caused by such breach, and if the fact was as claimed, that the party complaining actually supplied the deficiency which the other was bound to furnish, the genuine cost of such supply, if found reasonable and just under the circumstances, or if found to have been acquiesced in by the defaulting party, would afford a criterion of damage to be recovered.

The gist of the action is an alleged breach of Stimson's stipulation to furnish labor and necessaries for the *joint* benefit and not for the *individual* benefit of the corporation, and it excludes the idea of a distinct legal interest of

the corporation as against Stimson in the labor and necessaries supplied. They were intended for the joint benefit, and the facts will not allow any particular part to be considered as separated for the purpose of being dealt with as labor supplied and goods sold and delivered by one individual to another. The endeavor to effect a settlement exploded, and no debt was liquidated on which *indebitatus assumpsit* might be based. In short, no conditions appear on which to found any right to institute a claim by the common counts. They are not applicable and the court erred in holding otherwise.

It is needless to discuss all the rulings the court would not be at liberty to approve, because there is no likelihood they will be repeated. One or two may be briefly noticed. A witness for the corporation was allowed to use its private account books to support its bill of particulars and was then permitted, on testifying, to make use of the latter as competent and trustworthy for the purpose of charging Stimson for labor and articles claimed to have been furnished by it in carrying out the contract for running the logs.

These entries in the books not being shown as against Stimson to be rightly there, were purely self-made testimony and wholly ineffectual to help the bill of particulars. It was an attempt to prop up one broken reed with another.

At another stage of the trial the jury were allowed to charge Stimson with the value of two canoes, when there was not only no evidence at all of an express sale, but when the facts were repugnant to one by inference, implication or presumption.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.