# JUNE TERM, 1907.*

---

## JACOBS v. MORGENTHALER.

1. PARTNERSHIP ASSOCIATIONS—DISTRIBUTION OF ASSETS—RIGHTS OF STOCKHOLDERS.

   The action of all but one of the stockholders of a limited partnership association in transferring certain notes belonging to the association to one of themselves, in payment of an alleged indebtedness, does not bind the nonparticipating stockholder if there was in fact no indebtedness.

2. SAME—INDEBTEDNESS—PURCHASE OF STOCK—PRESUMPTIONS.

   Where payments are shown to have been made by an individual to a limited partnership association, the absence of proof that such payments were made for the purchase of stock justifies an instruction that they made the payor a creditor of the company.

3. SAME—DISTRIBUTION OF ASSETS.

   A division of the assets of a limited partnership association among its stockholders, in proportion to the amounts paid in by them, is valid, there being no creditors, though the payments were made by the stockholders upon the understanding that they should take treasury stock for them.

4. SAME — PAYMENTS BY STOCKHOLDER — PURCHASE OF STOCK — EVIDENCE.

   Evidence examined, and *held,* to show that certain payments made by a stockholder of a limited partnership association were advancements to it and not payments on account of treasury stock purchased by him.

5. EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.

   The books of a limited partnership association are not admissible to show that defendant paid money on an alleged special obligation to take treasury stock at 50 cents on the dollar, which obligation the defendant denies, and which is not otherwise proved.

---

* Continued from Vol. 148.

6. PARTNERSHIP ASSOCIATIONS—SALE OF ASSETS—DISTRIBUTION—
   FRAUD—EVIDENCE.

Evidence examined, and *held*, that there was an absence of
proof of fraud in the sale of the property of a limited part-
nership association, and an arrangement to apply the notes
received therefor upon the claim of a creditor stockholder.

7. SAME—RECEIVERS—CONVERSION OF ASSETS—EVIDENCE—ADMIS-
   SIBILITY.

In trover by the receiver of a limited partnership association
against a stockholder for certain notes given in part payment
for the property of the association, and distributed to the
stockholders in payment of their claims against it, evidence
is admissible to show that a sum sufficient to pay all out-
standing debts of the concern, except such as were due the
consenting stockholders, was set aside, and placed in the
hands of the secretary for that purpose.

8. SAME.

Defendant is also entitled to show, by cross-examination of the
receiver and the secretary, who is the principal creditor, that
no action has been brought against other stockholders who
received notes under similar circumstances.

9. SAME.

Defendant is also entitled to show the facts regarding the
claim of the secretary, the principal claimant, and the con-
ditions upon which, and the funds from which, it was to be
paid.

Error to Calhoun; North, J.   Submitted April 15,
1907.   (Docket No. 101.)   Decided July 1, 1907.

Trover by Henry F. Jacobs, receiver of the Grocers'
Specialty Manufacturing Company, Limited, against
Henry W. Morgenthaler.   There was judgment for
plaintiff, and defendant brings error.   Reversed.

*Moore & Moore* (*R. J. Kelly*, of counsel), for appel-
lant.

*Henry F. Jacobs* and *Bernard J. Onen*, for appellee.

HOOKER, J.   This plaintiff is a receiver in an action
brought by one Gilbert against the Grocers' Specialty Man-
ufacturing Company, Limited, and the order appointing

him required that company, and all of its officers, agents, and servants, to turn over to him its property. Gilbert was a stockholder and secretary of the company. There is nothing in the record showing the nature of the bill filed by him, whether as a creditor, alleging insolvency, or as a stockholder, claiming a misapplication of its proceeds. The record does conclusively show, however, that prior to the bringing of said suit, the stockholders of said company all assenting (including Gilbert), sold the business of said company to the extent of its manufacture of "Eat-a-Biscuit," to the Malta Vita Company, for $50,000 down, and a further sum of $50,000, contingent on certain prescribed results, dependent upon the purchaser's profits from the business. We discover no claim that the debts of the Grocers' Company, outside of debts owed to its several stockholders, exceeded $5,000 or $6,000, while the receiver testified that all of the claims filed with him amounted to about $6,000, and of these Mr. Gilbert's amounted to $5,207.52. According to Gilbert's testimony, $5,000 of his claim was a sum that was promised him upon the surrender of a verbal option, and was conditioned on a sale to the Malta Vita Company. He admitted that he got his salary up to June 30, 1903, which was less than two weeks before the agreement of sale to the Malta Vita Company. Gilbert signed the bill of sale to the Malta Vita Company, and, while that is not shown by the record, Gilbert's own testimony shows that he as secretary received from that company $5,000 in cash and $20,000 in notes, and that he acquiesced in the application of $4,000 to the payment of the claim of the Malta Vita Company against the Grocers' Specialty Company, and $21,000 to Mr. Wisner, for money that he claimed to have advanced to the Grocers' Specialty Company, under circumstances similar to, if not identical with, those under which Cole and the defendant claim that they advanced money, and for which all other witnesses to the transaction say that they—i. e., Cole and the defendant—were to receive the $20,000 in notes.

We may start with the proposition, then, that all stockholders, including Gilbert, agreed to the sale, and that the only differences in their understanding are (1) whether Cole and defendant were to receive the $20,000 notes in payment of money loaned; (2) whether Gilbert was to receive $5,000 from the payment made, or from, and subject to the condition of, the deferred payment. It being clear that the parties agreed to the sale to the point mentioned, and that Gilbert aided in consummating it, and that according to his theory $20,000 in notes went to the company, it is apparent that his bill was not filed to attack the sale as a fraud upon creditors, and we must, therefore, assume that it was filed against the defendant to reach assets in his hands belonging to the company in which he claimed an interest as creditor and stockholder; and that the court appointed the receiver to take possession of the assets, to preserve them, and, incidentally, to pay all claims against the concern before otherwise disposing of the assets. If this is not the theory upon which the bill was filed, we do not know what it was.

Perhaps it is enough for the purposes of this action to know that a receiver has been given authority to take over the assets and that he has brought trover for the alleged conversion of some of them, that they were clearly the assets of the company, and recoverable by him, unless they were turned over by consent of a majority of the stockholders to be applied on a valid debt of the company, or by consent of all the stockholders, if the claim was not a valid debt for advancement, but was at the time one of several payments made by different persons upon an agreement that it should pay for treasury stock purchased. The evidence conclusively shows that at the time the contract was made with the Malta Vita Company it was agreed and understood by all of the stockholders, unless it were Gilbert, that the claims of Wisner, Cole, and Morgenthaler were advancements of cash, and debts of the concern, and should be so treated, and that the $20,000 in notes to be given to the Grocers' Company should be

turned over to them, to be applied in payment, so far as that sum should go, and it is overwhelmingly proved that Gilbert understood and consented to this arrangement, so overwhelmingly proven, indeed, that were there opportunity we should order a new trial upon this ground. It is also conclusively shown that, whatever Gilbert knew or agreed to at that time, he acquiesced in the payment by the Malta Vita Company of $21,000 to Wisner, to be applied to the payment of the $26,000, which he now claims was paid upon a purchase of treasury stock. The liability of the defendant, then, depends upon the jury's being able to say (1) that Gilbert did not consent to the arrangement which is clearly shown to have been made with the Malta Vita Company, and (2) that the money paid by defendant was for a purchase of treasury stock, and not as a loan, and therefore did not become an indebtedness from the company. Failing to find either of these, the verdict should have been for the defendant, as in such case there would be an absence of an unlawful conversion.

Gilbert testified that he was not present when the arrangement that Cole and defendant should have the $20,000 of notes was made. That is as far as his testimony goes upon this subject. Therefore we have said that it conclusively appears that such an arrangement was made by the majority of the stockholders. Such an arrangement was not binding upon Gilbert, in the absence of his knowledge or consent if the company did not owe defendant. Therefore it was for the jury to determine whether he did have knowledge of, or consent to, it. In case they had found that he did, a verdict for defendant should have followed. If, however, they found the contrary, the verdict should still have been for the defendant, if he was a creditor, but not if the payment was for the purchase of stock. It becomes important, then, to determine whether either proposition was conclusively shown. It is admitted that defendant paid the money claimed. In the absence of proof that it was for the pur-

chase of stock, the record justified a direction that it made him a creditor of the company.

To prove that it was for the purchase of stock, plaintiffs offered the following testimony:

Gilbert testified:

"I listened to the testimony of Mr. Morgenthaler and others that they didn't purchase any treasury stock. I was secretary of the company, and as such kept the company's minutes. I have examined that book, and it is the record minute book of the company. I know, because I kept it as secretary, and it is in my handwriting.

"*Q.* I will ask you if the entries in here were made cotemporaneous with the transactions they record?

"*A.* They were, and they are correct.

"*Q.* Now, I show you the minutes of the meeting, June 21, 1903, and ask you if you are familiar with the entries there, and if they are the same there as they transpired at the meeting?

"*Mr. Moore:* Objected to. The meeting was not held at the company's office, but at the Phelps Sanatorium. All the managers were not present and no hour is stated for the meeting; also that the resolution is ambiguous.

"*The Court:* I will allow them to introduce the resolution, to which ruling defendant excepted. * * *

"*Q.* I will read over the names of the directors present at that time, and you may state whether or not they were all the members of the board of directors at that time. Cole, Morgenthaler, Wisner, S. D. Gilbert—was that all of the entire board at that time?

"*A.* No.

"*Q.* How many members of the board were there?

"*A.* There were five.

"*Q.* Can you state whether or not proper notices were served upon these people as to the meeting to be held?

"Objected to on the ground that the notice is the best evidence, as it is in writing.

"*The Court:* I think the notice should be produced or proof that it cannot be. Objection sustained. * * *

"*Mr. Jacobs:* I desire to read a portion of the minutes of the meeting June 21, 1902, minutes of the meeting of the board of directors present. (To which defendant's counsel objected as incompetent, immaterial, and irrelevant. The court overruled, and defendant excepted.)"

The resolution was then read from page 63 of the record, and is as follows:

"Parties present: Luther C. Cole, Henry W. Morgenthaler, A. C. Wisner, S. D. Gilbert; Luther C. Cole presiding. Upon motion, the following resolution was unanimously passed, after a discussion of the financial requirements of the company: Resolved, that $200,000.00 of the stock of this company remaining in the treasury be offered to the stockholders of said company at fifty cents on the dollar; and we, as stockholders of said company, hereby agree, and do subscribe for our portion of said stock, as per the original allotment, the same to be subscribed for, and payments to be made at the call of the treasurer, as the requirements of the business make it necessary."

The witness continued:

"(Book produced.) This is the journal of the Grocers' Specialty Manufacturing Company. I am familiar with it. The entries were made contemporaneously with the events recorded therein. The books were kept under my supervision and direction as secretary of the company, and the entries therein are correct. They were made by Mr. J. W. Warrick. I recognize that it is in his handwriting, with which I am perfectly familiar. The books were kept under my direction and I know the entries are correct. Mr. Warrick is in Nashville today.

"Q. I hand you a book marked 'Exhibit 9,' called the 'journal,' and I hand you the check of Mr. Morgenthaler against this company. Also I hand you a statement that Mr. Wisner produced as proof of the fact that the company owed himself, Cole, and Morgenthaler, especially Morgenthaler. Now, I ask you to turn to page 23 in that journal, and I will ask you if you find there a credit to Mr. Henry W. Morgenthaler, and, if you do, read it.

"A. I do.

"Q. Is that the book of original entry of this company?

"A. Yes, sir.

"Q. Now read it.

"Plaintiff's Counsel: I offer to read this credit as an exhibit in evidence and ask permission to read it to the jury.

"Defendant's counsel objected to the reading of this

entry as irrelevant, immaterial, and incompetent, and as not proper rebuttal, and the defendant's counsel further objected to the introduction of the entries for the reason that they were made by the agent of the plaintiff in this cause and in his own interest, and they are now offered in rebuttal to corroborate the testimony of that agent. Objection overruled and defendant excepted.

"*A.* (Reading), 'Check of H. W. Morgenthaler, 6–23, treasury stock, $6,000.00.' I have the check dated June 23, 1902. These checks are marked 'Exhibit 8, A-H.' The date of the check is the date of the entry. There is nothing on the check to indicate that the money was loaned to the company.

"*Q.* In the statement furnished by Mr. Wisner you find a statement of the corresponding amount and the corresponding date?

"*A.* There is. (Reading), 'June 24, H. W. Morgenthaler, $6,000.00.'

"*Q.* (*Mr. Moore.*) There is nothing in the written statement furnished to Mr. Wisner about treasury stock is there? (A copy of this statement furnished to Mr. Wisner is attached thereto marked 'Exhibit 7' and made a part hereof.)

"*A.* No, sir.

"*Plaintiff's Counsel:* We don't claim that. We claim that the statement is taken off this book.

"*Q.* Now, I ask you to turn to page 54 of that book and see if you find a credit there to Henry W. Morgenthaler.

"*A.* There are several. We offer the first entry in evidence. (To the introduction of this entry in evidence the same objection was made as to the other entries. Objection overruled and an exception taken.)

"*A.* (Reading), 'Check of Morgenthaler, 10-25, treasury stock, $1,000.' 10-25 means October 25.

"Among the checks produced by Mr. Morgenthaler, I find there is a draft for $2,000 made upon the Grocers' Specialty Manufacturing Company, Limited, and the Pilgrim Publishing Company. The Grocers' Specialty Company received $1,000 of this on October 25, the date of the entry in the books. That is the draft which Mr. Morgenthaler testified this company got $1,000, and the Pilgrim Publishing Company the other. This entry also appears in the statement made to Mr. Wisner, which reads, 'Oct. 25, H. W. Morgenthaler $1,000.'

" Another entry on page 54 was offered in evidence. The same objection, ruling, and exception.

"*A.* 'Check of Morgenthaler, 11-11, treasury stock, $3,500.' That means November 11.

"Mr. Morgenthaler's check for that amount is dated November 10, 1902. The entry on the book shows treasury stock. The entry on the check shows simply payment of money. There is nothing to indicate that it was a loan to the company.

"Another entry on page 54 was offered in evidence. Same objection and exception.

"*A.* (Reading), 'Check of H. W. Morgenthaler, treasury stock, $1,000.'

" The date is January 12th. The date is not given here as it was in the other place. The first entry is January 12th, and the following is the 13th. If that was entered at the time it was received, it was between those two dates. The check is January 10, 1903, for $1,000, signed by H. W. Morgenthaler, date of entry January 12, 1903. In the Wisner statement this entry appears 'January 12, H. W. Morgenthaler, $1,000.'

" Entry on page 61 of the book was offered in evidence. Same objection, ruling, and exception.

"*A.* (Reading), 'Check of H. W. Morgenthaler, treasury stock, $1,000.'

" There is a check from Mr. Morgenthaler for $1,000 dated January 30, 1903. The above item is dated February 2, 1903. On the statement furnished to Mr. Wisner appears the entry, 'February 2, H. W. Morgenthaler, $1,000.'

" Entry on page 72 was offered in evidence. Same objection, ruling, and exception.

"*A.* (Reading), 'March 9, 1903, check of H. W. Morgenthaler, treasury stock, $2,000.'

" There is a check here March 7, 1903, for $2,000 signed by H. W. Morgenthaler. On the statement furnished to Mr. Wisner there is an entry 'March 6, H. W. Morgenthaler, $2,000.'

"An entry on page 65 was offered in evidence. Same objection, ruling, and exception.

"*A.* (Reading), 'January 23, treasury stock, $1,500.'

" The amount corresponds with the check. The date is one day later. The credit should have been given to Mr. Morgenthaler as he paid the money. Payment was made by check dated January 22, 1903, for $1,500, signed

by H. W. Morgenthaler. In the statement furnished to Mr. Wisner, A. C. Wisner from H. W. Morgenthaler, $1,500.

"Counsel for plaintiff then offered in evidence all the journal entries that had been recited to the jury to make the record clear and to be sure. To each the same objection was made. In each case the objection was overruled, and the defendant excepted, and each entry was then specifically admitted in evidence.

" *Q.* Were all the entries you cite original entries of the transaction?

"*A.* They were.

" *Q.* I show this book; what is it?

"*A.* It is the general ledger of the Grocers' Specialty Manufacturing Company, Ltd.

" *Q.* I call your attention to page 'Exhibit 10.'

"*A.* That is one of the books kept in their regular business of the Grocers' Specialty Manufacturing Company. It is the ledger to which the journal account was transferred.

" The account was then offered in evidence, objected to as incompetent and immaterial, and because it was not binding on the defendant.

"*The Court:* That has appeared. This is also one of the books originally kept in the business of the Grocers' Specialty Company.

"*Mr. Jacobs:* He has testified to that fact. (Objection overruled and exception taken. The page was then read in evidence, a copy of which is hereto annexed, marked 'Exhibit 10,' and made a part hereof.)

"The statement furnished by Mr. Wisner was then compared by the witness, and the amounts found to be alike except the last two items on the ledger, one of $4,106.90, which was afterwards transferred from his account and paid by the Malta Vita Company. This was no part of the claim that he stated yesterday amounted to $25,000. The other item of $40, which entry appeared on Journal, page 70. The title of this account I have just been reading from is 'Treasury Stock.'

"*Q.* I call your attention to the resolution of June 21, 1902, which has been read to the jury.

"*Mr. Moore:* The date of the resolution shows for itself. Counsel read that to the jury and stated the date. I don't understand that you introduced part of it and left out the rest of it. If you did, I move to strike that out.

"*The Court:* The motion to strike out will be overruled or denied, because, if counsel wishes to introduce the balance of the record, he may do so.

"*Mr. Moore:* I object to it. They have a paper before them and they cannot prove the contents of it by parol. I submit they cannot introduce part of the resolution and keep back the balance.

"*The Court:* He wishes to introduce it in explanation of the resolution to show the date; but the objection is sustained as far as testifying to it orally.

"*Mr. Jacobs:* Then I offer in evidence the whole of the minutes of the meetings of the board of directors of the Grocers' Specialty Manfg. Co., Limited, found on page 63 of the minutes of the company. (Record book of the Company, marked 'Exhibit A.')

"*The Court:* The whole of the minutes as they appear on that page, and the whole of the minutes of June 21, may be received in evidence. (To which ruling defendant excepted.)"

The resolution was then read in evidence, marked "Exhibit 8," and is as follows:

"Upon motion, the following resolution was unanimously adopted after a discussion of the present requirements of the company: Resolved, that two hundred thousand dollars of the capital stock of the company remaining in the treasury be offered to the stockholders of said company at fifty cents on the dollar; and we, as stockholders of said company, do hereby agree and do subscribe for our portion of said stock, as per the original allotment, the same to be subscribed for, and estimates to be made of the stock of the treasury as the requirements of the business may be necessary. Minutes of meeting read. On motion, adjourned.

"S. D. GILBERT,
"Secretary."

It will be observed that there is a slight difference between the resolution as first read, and as it appeared in the book. The court instructed the jury that this resolution did not create a present obligation on the part of the defendant, and that, as the testimony showed that no call was made by the treasurer for any payment, under the resolution, there was no obligation on defendant's part to

pay any such on account of the resolution, unless in pursuance of that resolution defendant actually proceeded to make payment upon the stock, but, if they should find that he did afterwards so make payments, he would not be entitled to repayment of the money, and the court added:

"Now, if in this case you find that the whole $16,000 advanced by Mr. Morgenthaler was in fact payment for stock subscribed for by him, then the case is at an end, and your verdict in that case should be for the plaintiff."

This instruction was erroneous; for, if the jury should have believed that all of the stockholders had agreed that the first payment should be divided up in the way claimed by the defendant, they had a right to do so, although at the time defendant Cole and Wisner paid their money it was upon the understanding that they should take treasury stock for it. Morgenthaler's payments were made at different times, viz.: June 23, 1902, $6,000; same date, $1,000; November 10, 1902, $3,500; January 10, 1903, $1,000; January 22, 1903, $1,500; January 30, 1903, $1,000; March 7, 1903, $2,000—amounting in all to $16,000. The only evidence that was offered to show that it was paid upon the purchase of new stock consisted of the resolution in question, and the entries upon the books of the Grocers' Company of credits to Morgenthaler for money paid already quoted. The learned circuit judge appears to have held that there was no presumption from the resolution, that these payments were made for the purchase of stock, but that the entries upon the books were some evidence tending to prove that they were so made. There appears to be no evidence on the part of the plaintiff that there was anything said about it when the checks were delivered and no stock was delivered or offered.

The introduction of books of account in favor of their owners is upon the theory that they tend to prove the delivery of goods, the payment of money, or the rendition of service to or for another. In this case they were introduced, not to show that the defendant had purchased

treasury stock, which had been sold and delivered to him, but to establish the fact that he had paid money upon an alleged special obligation to take it at 50 cents on the dollar, which obligation is denied, and which the court decided not to have been otherwise proved. It is admitted that the money was paid by the defendant, and upon this record it clearly appears to raise the relation of debtor and creditor, unless by these books it be made to appear that it was paid upon a special contract. Books of account are not competent to prove a prior special agreement. See 2 Enc. of Evidence, p. 658, note *b*, and cases cited in notes, 17 Cyc. p. 380. See, also, *In re Ward's Estate*, 73 Mich. 225.

" It is generally held that a book of accounts, although duly authenticated, is not competent evidence to show the delivery of goods under a previous express contract.

" Nor to prove work and labor done under a special agreement." 2 Enc. of Evidence, pp. 642, 643.

See *Tioga Manfg. Co.* v. *Stimson*, 48 Mich. 217. Nor, we may add, to prove that money received was paid for goods or stock that admittedly were not delivered. We must hold, therefore, that these books were not admissible, and that the court erred in leaving to the jury the question whether the money was paid as the purchase price of stock.

We are also of the opinion that there was an absence of proof of fraud in the sale of the property to the Malta Vita Company, and the arrangement to apply the notes upon defendant's claim, even if Gilbert was not aware of and did not consent to the same.

There was error in the refusal to permit defendant to show that a sum sufficient to pay all outstanding debts of the concern (except such as were due the consenting stockholders) was set aside, and put in Gilbert's hands for that purpose. Also to show by Gilbert and the receiver on cross-examination that no action had been brought against Cole or Wisner.

There was also error in refusing to admit testimony

regarding Gilbert's claim of $5,000, the conditions upon which, and the fund from which, it was to be paid.

It is unnecessary to refer to other questions.

The judgment is reversed, and a new trial ordered.

McALVAY, C. J., and MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.