BLUEMER *v.* SAGINAW CENTRAL OIL & GAS SERVICE, INC.

1. NEGLIGENCE—UNBARRICADED TRAP DOOR.

Leaving a 3' x 7' trap door through floor open and unbarricaded in a passageway in a gasoline station where the public was invited to be was negligence.

2. LANDLORD AND TENANT—GASOLINE STATION—REPAIRS—CONTROL OF PREMISES AND BUSINESS.

The obligation of the lessor of a gasoline service station to keep in repair the building and equipment on the premises may not be construed as a reservation of the right to control the premises or the business conducted thereon.

3. SAME—TRAP DOOR—LESSEE'S DUTY TO KEEP CLOSED.

The obligation of a lessee of a gasoline service station to keep the premises "clean and orderly at all times" is construed as requiring the tenant to keep closed the trap door in floor of passageway where the public was invited to be, since an open trap door, so situated as to constitute a hazard to those using the premises, does not constitute operation in an orderly manner.

4. SAME—CONTROL OF STATION—PURCHASE OF PRODUCTS FROM LESSOR.

Provision of lease of gasoline service station that tenant purchase all of his requirements of gasoline, motor oils and lubricants from the lessor during the term of the lease does not affect the issue as to whether or not the lessor had the right to control the operation of the business and the premises designed therefor.

5. SAME—CONTROL OF PREMISES—CONSTRUCTION OF LEASE.

Lease of gasoline service station to tenant operator, which did not expressly negative the lessor's right of control of the premises or business *held*, to have impliedly excluded lessor from such control or direction.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 6] 38 Am Jur, Negligence §§ 102, 105, 136.
[2] 32 Am Jur, Landlord and Tenant § 819.
[4, 5] 32 Am Jur, Landlord and Tenant § 195 *et seq.*
[7] 32 Am Jur, Landlord and Tenant § 774.
[9] 39 Am Jur, Nuisances § 2.
[10, 11] 39 Am Jur, Nuisances § 11.
[12, 15] 32 Am Jur, Landlord and Tenant § 653 *et seq.*
[14, 16] 39 Am Jur, Nuisances § 145.

6. SAME—GASOLINE SERVICE STATION—CUSTOMER—INVITEES—TRAP
DOOR.

Plaintiff, customer at gasoline station, who entered station to
pay for purchase and fell through unbarricaded 3' x 7' trap
door opening in floor where public was permitted to be,
*held*, not an invitee of the landlord, since the latter was
not conducting the business and was not invested with the
right of control of the premises for the operation therein
which the tenant had assumed under the lease, was not jointly
conducting the business with the appellee and the tenant was not
the landlord's employee.

7. SAME—REPAIRS—TRAP DOOR—GASOLINE SERVICE STATION.

Injury to plaintiff customer at gasoline service station, received
when he fell through an unbarricaded 3' x 7' trap door opening,
did not impose liability upon landlord by reason of its
covenant to keep premises in repair, where the injury was
not because the trap door had become unsafe during the co-
defendant tenant's occupancy.

8. SAME—CONTROL OF PREMISES OR BUSINESS—EVIDENCE.

Claim of counsel for plaintiff customer at gasoline service sta-
tion, that defendant landlord conducted business operations
upon the premises, in that the defendant tenant made col-
lections for the landlord on fuel-oil accounts in the com-
munity, *held*, not sustained under record presented, where
evidence merely shows the parties had had some conversation
with respect thereto but had not reached an agreement and
it does not appear that the tenant had made collections, hence,
landlord's control of the premises or business conducted there-
on was not established.

9. NUISANCE—PER SE.

A nuisance at law or a nuisance *per se* is an act, occupation or
structure which is a nuisance at all times and under any cir-
cumstances, regardless of location or surroundings.

10. SAME—PER ACCIDENS.

Nuisances in fact or *per accidens* are those which become nui-
sance by reason of circumstances and surroundings, such
as where there is a natural tendency of the act to create
danger and inflict injury on person or property and the
question of whether or not there is such a nuisance is usually
a question of fact.

11. SAME—REMEDY—EVIDENCE.

The difference between a nuisance *per se* and one in fact is not
in the remedy but only in the proof, the former being estab-

lished by proof of the mere act and the latter by proof of the act and its consequences.

12. LANDLORD AND TENANT—NUISANCE—INJURY TO INVITEES.
Generally, a landlord is liable for negligent construction of premises or nuisance resulting in injury to invitees where such condition existed at the time of the demise of the premises.

13. NEGLIGENCE—INVITEES—WARNING OF DANGER.
Every man who expressly or by implication invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of which they are not aware.

14. NUISANCE—QUESTIONS FOR JURY—PROXIMATE CAUSE.
The question as to what constitutes a nuisance is one of law for the court, but it is for the jury to decide whether a particular act or structure or use of property, which is not a nuisance *per se*, is a nuisance in fact and whether an alleged nuisance is the cause of the losses or injuries complained of and to what extent such losses or injuries are attributable to the nuisance.

15. LANDLORD AND TENANT—UNSAFE CONDITION OF PREMISES.
A landlord may be held liable in damages for injury sustained by an invitee as the result of an unsafe condition existing with reference to leased property at the time of the execution of the lease, where such invitee was using the premises in the manner intended under the lease.

16. SAME—NUISANCE—GASOLINE SERVICE STATION—TRAP DOOR—QUESTION FOR JURY.
It was for the jury to determine whether or not a nuisance in fact existed on the premises used as a gasoline service station at the time they were leased to the tenant and whether it continued to so exist until the time of the accident to plaintiff, an invitee of the tenant, who was injured by fall through an unbarricaded 3' x 7' trap door opening.

Appeal from Saginaw; O'Neill (James E.), J. Submitted April 7, 1959. (Docket No. 1, Calendar No. 47,129.) Decided June 6, 1959.

Case by Marvin K. Bluemer against Saginaw Central Oil & Gas Service, Inc., a Michigan corpora-

tion, and its lessee, for damages arising from injuries sustained in fall through unguarded trap-door opening. Directed verdict and judgment for defendant lessor. Plaintiff appeals. Reversed and remanded.

*Martin & Martin* (*Fred Martin, Jr.,* of counsel), for plaintiff.

*Weadock & Montgomery* (*Jerome Weadock,* of counsel), for defendant.

CARR, J. This is an action for damages for personal injuries. The material facts are not in dispute but the parties disagree as to the inferences that may be drawn therefrom. The defendant corporation being the owner of certain premises in the city of Saginaw, Michigan, constructed thereon, prior to the events involved in the instant case, a gasoline service station. Said place of business was designed for use in the sale of gasoline, lubricating oils, and other products incidental to the use and repair of automobiles. Under date of November 1, 1949, it leased the premises in question to Gerald Machul to be used for the purposes for which the premises were intended. The lessee went into possession of the property and conducted business in accordance with the terms of the leasing agreement, operating under the name of "Gerry's Super Service."

On February 26, 1950, the plaintiff in the instant case went to the service station for the purpose of purchasing gasoline, and did so. It was his claim on the trial that he entered the building with the intention of going to the office and making payment there for his purchase. This necessitated his going through a passageway in which there was a trap door approximately 3 feet in width and 7 feet in length, placed and intended for the purpose of permitting access to the basement where the heating plant for the

building was located. Plaintiff claims that he was not aware, at the time, of the existence of the trap door, although he had gone through the passageway on prior occasions. He opened the door leading to the office and undertook to proceed, without noticing that the trap door was open. The result was a fall of several feet causing injuries of a severe nature, for which plaintiff seeks damages in this action. It was the claim of plaintiff on the trial that the open entrance to the basement was not guarded in any way, that there was no warning posted or otherwise given of the existence of the trap door, and that, because of the absence of sufficient light, he did not discover the danger.

The declaration filed in the cause on behalf of plaintiff alleged in the first count that the defendants, the lessor and the lessee, were conducting business on the premises, and that plaintiff was the invitee of each, that it was the duty of the defendants to maintain the premises in a reasonably safe condition for use by members of the public entering the station for business purposes, that such duty was owing to plaintiff, and that defendants were guilty of negligence constituting the proximate cause of the accident. A second count in the pleading averred, in substance, that the entrance to the basement was constructed and maintained by the defendants in such manner as to constitute a continuing and inherent danger to the safety of persons properly on the premises, that the defendants were charged with knowledge of the danger and hazardous condition, of which plaintiff did not know, and that defendants failed in their duty to warn him by appropriate means of such condition or to provide proper safeguards.

At the conclusion of the proofs on the trial counsel for defendant Saginaw Central Oil & Gas Service, Inc., moved for a directed verdict in its favor on

the ground that the codefendant, Machul, was in sole possession and control of the station in which plaintiff was injured, that he was the tenant of the premises, and that the landlord was not in possession or control of the station or of the business. The motion was granted and verdict directed accordingly. The case was submitted to the jury as to the liability of defendant Machul, and a verdict returned in the sum of $7,000. Plaintiff has appealed from the judgment entered in favor of the Saginaw Central Oil & Gas Service, Inc., claiming that the trial judge was in error under the proofs in the case in refusing to submit his right to recover damages from said defendant.

As before noted, the first count of the declaration filed by plaintiff was based on the claim that the business of operating the filling station was conducted by both defendants, that plaintiff was on the premises as their invitee, and that they breached the duty owing to him. It is not disputed that the trap door was left open on the occasion in question by an employee of the tenant. That such act was negligent is not open to question. It is contended on behalf of appellant that the appellee was under the circumstances disclosed by the proofs interested in the carrying on of the business. Emphasis is placed on the fact that gasoline and other products sold by the tenant were purchased, in accordance with an agreement, from appellee, and that, in effect, Machul was acting not merely for himself but for the other defendant as well in the carrying on of the business.

The precise nature of the relation created by the lease requires consideration of the instrument as executed by the parties, and apparently observed in the actual conduct of the business. Omitting formal parts, the instrument reads as follows, the appellee

being designated as the party of the first part and the tenant as the party of the second part:

"The party of the first part agrees to lease to the party of the second part for the period of 1 year, the gasoline filling station and vacant property in the rear of 432 So. Washington avenue in Saginaw, Michigan with the exception of a driveway right along the extreme easterly line of said vacant property, together with the equipment which is a part of the station. An inventory to become a part of this lease. The rental on the above-described property to be $75 per month payable in advance. The first payment to be made upon the execution of this lease, the second payment to be made December 1, 1949 and subsequent payments the first of each month until this lease expires.

"The party of the second part is to have the option of renewal of this lease for a term of 1 year with a maximum of $25 per month increase in rental.

"The party of the first part agrees to maintain and keep in repair the building and equipment on the premises.

"The party of the second part agrees to operate said property as a gasoline filling station and render the regular services commonly found at a gasoline service station, namely—lubrication, tire repairs and minor repairs to motor vehicles. To keep the premises clean and orderly at all times and replace all broken glass.

"The party of the second part agrees as part of the lease to purchase his entire requirements of gasoline, motor oils and lubricants from the Saginaw Central Oil & Gas Service, Inc., its successors or assigns during the term of this lease. Failure to pay the rent on the above-described property makes this lease void."

It will be noted that the agreement did not reserve to the landlord the right to a control of either the premises or the business. The obligation assumed by

it to maintain and keep in repair the building and equipment leased to Machul may not be construed as a reservation of such right of control. The operation of the filling station involving the rendition of services to the public was expressly assumed by the tenant, who was further charged with the duty of keeping the premises "clean and orderly" at all times. The latter provision may be regarded as requiring the tenant to keep the trap door closed. Clearly an open trap door, so situated as to constitute a hazard to those using the premises, does not constitute operation in an orderly manner. The nature of the obligations assumed by the tenant under the lease was such as to indicate an intention that control of the business and of the premises should rest with him. The provision with reference to the purchase of gasoline and other products sold at the station does not affect the issue as to the right to control the operation of the business and the premises designed therefor.

In *Samuelson v. Cleveland Iron Mining Company,* 49 Mich 164 (43 Am Rep 456), the action was brought to recover damages for personal injury resulting in the death of plaintiff's intestate. Liability was asserted against defendant for failure to properly maintain roof supports in the mine, which was at the time being worked under written contract with a third party. Under the contract the mine was required to be worked in a careful and prudent manner and to the satisfaction of the owner's superintendent, and the expense of restoring it to proper condition in the event the party operating under the contract failed to do so was declared to be the liability of such party. It was specifically stated in the agreement that the relationship created was that of "contractor and contractee," and not of master and servant. It was further specified that the operating party

should guard against dangerous conditions developing from time to time, and should assume all risks of danger or accident from whatever cause arising, exercising proper precautions in connection with the operation of the mine. This Court affirmed judgment for defendant on a directed verdict on the ground that the proofs did not show that a hazardous condition existed at the time the contract for the working of the mine was made, and that the owner had not retained charge and control of the mine carrying with it responsibility for the negligent failure to guard against dangers.

In *Brown* v. *Standard Oil Co.,* 309 Mich 101, an action was brought by the plaintiff administrator to recover damages for injuries sustained by his intestate who was employed in a gasoline service station owned by defendant Standard Oil Company and operated by its lessee. The lease did not reserve to the owner the right to exercise control over the business or the operations of the lessee on the premises. The retention of such control was expressly negatived. In this respect the lease differed from that involved in the case at bar. As before suggested, however, the clause of the instrument now before us for construction with reference to the operation of the filling station and the rendition of services to the public would seem to exclude by necessary implication any right of control or direction by the landlord.

In the *Brown Case* a sign across the front of the building indicated its operation by the tenant, with an added reference to Standard Oil products. It was claimed on behalf of plaintiff that his decedent had been fatally injured because of the failure of the defendants, the landlord and the tenant, to provide proper equipment. It was held under the proofs that the lessee conducted the station business as an independent contractor. Accordingly the Court sustained the action of the trial judge in granting the

motion of defendant oil company for a directed verdict in its favor. Judgment in favor of the lessee, pursuant to direction by the court, was reversed on the ground that the testimony presented a factual issue for determination by the jury with reference to the tenant's negligence.

Under the proofs in the case at bar we think that the trial judge was not in error in directing a verdict for the appellee under the first count of the declaration. Such defendant may not be said to have occupied the position of an invitor as to the plaintiff. Under the lease it was not conducting the business, nor was it invested with the right of control of the premises for the operations therein which the tenant assumed under the contract. We find no basis for a claim that Machul was conducting the business jointly with the appellee, or that he was appellee's employee. *Brinker* v. *Koenig Coal & Supply Co.*, 312 Mich 534, may be distinguished on the basis of the facts. The question at issue there was whether the driver of a truck, whose negligence was the basis of the action for damages, was an employee of the defendant or an independent contractor. The facts in the case were such as to permit conflicting inferences, and the trial judge submitted the question to the jury. This Court held that there was evidence that the driver was merely an employee, that there was, in consequence, no error in leaving the question for determination by the jury, and the judgment for plaintiffs was affirmed.

Under the pleadings and the proofs in the case at bar no issue is involved as to the consequences of a breach of a covenant to repair. The accident in which plaintiff was injured did not occur because the trap door became unsafe during the occupancy of the premises by the tenant. In consequence, *Huey* v. *Barton,* 328 Mich 584, and other decisions of similar nature are not in point. The facts also serve to dis-

tinguish the present case from *Siegel* v. *Detroit City Ice & Fuel Company,* 324 Mich 205. There plaintiff was injured by falling into a snow-filled hole in a parking lot owned by defendant, the premises being used by defendant in connection with its own business, by the Alhambra Theatre Company for parking purposes, and by a third party operating a hamburger stand. In sustaining the right of recovery it was pointed out that the landlord and the tenants each had control and possession, and that the rights of each were not exclusive.

In *Muth* v. *W. P. Lahey's, Inc.,* 338 Mich 513, cited by appellant, facts were involved at variance with those in the case at bar. The defendant, W. P. Lahey's, Inc., was the owner of a store in Muskegon in which it rented space to another corporation for the carrying on of a retail shoe business. The lessor was to furnish heat, light, janitor service, local telephone service, and air-conditioning facilities in its store, together with sales books, wrapping paper, bags and twine. All advertising was carried on in the name of the lessor. Receipts from lessee's business were required to be paid directly to lessor to be held in trust and accounted for after deductions as rental. The lessor also reserved control over credit sales and purchases, with the right to decide controversies between the lessee and its employees, and its customers with reference to goods sold, as well as to determine the qualifications of employees of lessee, with the right to insist on dismissal of any such employee whom the landlord deemed unsatisfactory. Plaintiff was injured by falling through an opening, ordinarily covered by a trap door, which was left open on the occasion in question by an employee of the lessee. It further appeared in the case that employees of the landlord occasionally used the stairway covered by the trap door as a means of ingress and egress to and from the basement of the

building. Under such facts it was held that the trial court was not in error in submitting to the jury the question as to the negligence of the owner of the store.

We do not have a comparable situation in the instant controversy. Appellee at the time of the accident was not engaged in carrying on business operations on the premises, nor did it have the right to direct its tenant with reference thereto. It was governed by the terms of the lease, and the proofs do not support any claim that the parties in their actual dealings did not observe the provisions of their contract. We note in this connection the claim of counsel for plaintiff that defendant Machul made collections for appellee on fuel-oil accounts in the community. Apparently such claim is predicated on the testimony of Machul that at one time the manager of appellee discussed with him such collections. It does not appear from the testimony in the record that the discussion culminated in any agreement or that the tenant actually made such collections for the landlord. In consequence the matter does not call for further consideration.

This brings us to the question whether the trial court was in error in refusing to submit to the jury the question of appellee's liability under the second count of the declaration. As before noted, said count was based on the claim that the defendant corporation had created a condition, inherently dangerous to persons using the premises, by locating the opening to the basement in a place that members of the public having business at the station were free to use, and in failing to give warning in any form with reference to the situation, or to provide barricades or other safeguards when the trap door was open. Emphasis is placed on the fact that use of the opening was necessary because of the location of heating facilities in the basement, requiring at least 2 trips

per day to the basement by the tenant or his employee during the season when heat was required. It is the theory and claim of plaintiff, in substance, that the situation with reference to the opening into the basement and the trap door was such that the jury trying the case might properly have found that a nuisance existed, and that liability might be predicated thereon.

It is not claimed that the opening and trap door in question constituted a nuisance *per se* but, rather, that because of its use, location, and other circumstances disclosed by the proofs it might be found to be a nuisance in fact. Attention is called to 66 CJS, Nuisances, § 3, pp 733, 734, where it is said:

"From the point of view of their nature, nuisances are sometimes classified as nuisances *per se* or at law, and nuisances *per accidens* or in fact. A nuisance at law or a nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. The number of nuisances *per se* is necessarily limited, and by far the greater number of nuisances are nuisances *per accidens*. For this reason whether or not a particular thing or act is a nuisance is generally a question of fact, as discussed *infra* § 8, to be determined in the first instance before the term 'nuisance' can be applied to it. * * *

"The difference between a nuisance *per se* and one in fact is not in the remedy but only in the proof of it. In the one case the wrong is established by proof of the mere act and becomes a nuisance as a matter of law, in the other by proof of the act and its consequences."

In 32 Am Jur, Landlord and Tenant, § 822, pp 699, 700, it is said, in discussing the liability of landlord and tenant for injuries resulting from a dangerous condition constituting a nuisance in fact:

"The landlord is ordinarily liable for injuries to persons outside the demised premises incurred during the term of a lease as a result of a dangerous condition or nuisance existing on the demised premises at the time of the demise. The general rule is that a landlord is liable for negligent construction, and a tenant for negligent use, of premises. A tenant may be held liable also, but only when it can be shown that he had notice of the existence of a dangerous condition or nuisance, or that time enough had elapsed in which he could by the exercise of proper care have obtained such knowledge. According to the rule in some jurisdictions, he is liable only after a request to abate the nuisance. There are decisions to the effect that in such cases if the lessee does nothing but maintain the premises in the condition in which he receives them, one who suffers from the nuisance must look to the landlord, and not to the tenant, for redress."

In recognition of the general rule suggested by the language above quoted, it was said by Justice COOLEY in *Samuelson* v. *Cleveland Iron Mining Co., supra,* 170, that:

"If the mine were in an unsafe condition when it was handed over to the contractors, and this was known to defendant, or by the exercise of proper care ought to have been known, and if in consequence a miner who was brought there in ignorance of the danger was killed, the defendant should be held responsible. Every man who expressly or by implication invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of which they are not

aware. This is a very just and very familiar principle." (Citing cases.)

The *Samuelson Case, supra,* was cited with approval in *Brady* v. *Klein,* 133 Mich 422, 426 (62 LRA 909, 103 Am St Rep 455, 2 Ann Cas 464, 14 Am Neg. Rep 351). In *Dahl* v. *Glover,* 344 Mich 639, which was an action for damages resulting from plaintiff falling into a manhole in a sidewalk in front of defendants' premises, the proofs indicated that plaintiff stepped on the cover of the manhole, and that the cover tilted upward and rolled away. Plaintiff's fall resulted. It was the theory of the plaintiff that the cover was defective. The trial court in submitting the case to the jury referred to different types of nuisances, including such resulting by reason of circumstances and surroundings, leaving it to the jury to say whether under the facts in the case and inferences to be drawn therefrom the manhole and manhole cover constituted a menace dangerous to the public and therefore a nuisance. The charge as given was approved by this Court and judgment for the plaintiff was affirmed.

In *Brown* v. *Nichols,* 337 Mich 684, plaintiff was injured as the result of being struck by a door to an establishment owned and operated by the defendants, which door was so constructed that it swung out over a public sidewalk. The trial court did not submit the case to the jury on the theory of a nuisance in fact because of the consequences that might result from the use of a door so constructed and operated. In reversing the case and remanding it for a new trial, it was held:

"The question as to what constitutes a nuisance is one of law for the court, but it is for the jury to decide whether a particular act or structure or use of property, which is not a nuisance *per se,* is a nuisance in fact and whether an alleged nuisance is the

cause of the losses or injuries complained of and to what extent such losses or injuries are attributable to the nuisance." (Syllabus 8.)

Decisions from other States tend to support the general proposition that a landlord may be held liable in damages for injury sustained as the result of an unsafe condition existing with reference to leased property at the time of the execution of the lease. Thus in *Bixby* v. *Thurber,* 80 NH 411 (118 A 99, 29 ALR 175), it was held that the plaintiff, who was injured as the result of slipping on ice formed on the sidewalk in front of leased premises, was entitled to judgment against the defendant landlord. The condition resulting in the injury was caused by defects existing at the time of the execution of the lease. The fact that the lessee agreed to keep the sidewalk free from ice was held to be no defense to the landlord in the action by the plaintiff. The Court recognized (p 413) the proposition that:

"Ordinarily the question whether a structure maintained in a way to affect the rights of others is a nuisance is one of fact."

The jury returned a verdict against both landlord and tenant, the appellate court setting it aside as to the tenant under the peculiar facts involved.

In *Nelson* v. *Hokuf,* 140 Neb 290 (299 NW 472), the plaintiff was injured while a patron in a beer parlor and recreation center. The proofs indicated that he fell through an opening resulting from leaving a trap door in a raised position. The question at issue was the liability of the landlords for injuries to an invitee of the tenant. The trap door was so placed that patrons of the place might be expected to pass over it, the condition existing at the time the lease between the landlords and the tenant was executed. As in the case at bar, the opening was designed to permit access to the basement of the prem-

ises. In substance, it was held that it should have been anticipated that injury might result from failure to keep the trap door closed. The situation had been called to the landlords' attention due to the fact that an accident had previously occurred. The trial court entered judgment for the landlords. In reversing the case the Court (p 292) cited with approval a prior decision in which it was held that:

"Where, however, premises are leased for a public or semi-public purpose, and the lessor knows at the time of leasing that a dangerous condition exists thereon which renders the premises unsafe for the public use intended, the lessor is liable for injuries sustained by patrons of such lessee who, upon invitation express or implied, are admitted to such demised premises to make use of the same for the particular purpose for which it was leased."

In *Texas Company* v. *Freer* (Tex Civ App, 1941), 151 SW2d 907, the court of civil appeals of the State of Texas, in upholding a verdict against the lessor of premises used for a filling station for the sale of gasoline and other products, quoted (p 912) with approval from 36 CJ, Landlord and Tenant, § 949, p 241, as follows:

" 'Where premises are rented in a bad state of repair, the landlord is liable to third persons for injuries resulting therefrom, and will be liable to a stranger for injuries sustained by him, by reason of the defective condition of premises in the possession of a tenant, where at the time of the letting, there existed a nuisance on such premises by reason of the defective or dangerous construction of a building thereon, or of parts used as appurtenances thereto.' "

Under the proofs in the instant case it was for the jury to determine the facts, to draw inferences therefrom, and to determine whether a nuisance in fact existed on the premises at the time of the lease and

continued to so exist until the accident in which the plaintiff was injured. While the plaintiff was the invitee of the lessee such fact would not bar recovery against the landlord responsible for the creating of the hazardous condition amounting to a nuisance, if such there was. The trial court was, therefore, in error in refusing to submit the case to the jury under the second count of the declaration for determination as to the liability of the appellee thereunder.

The judgment entered on the directed verdict in favor of appellee is reversed, and the case remanded for further proceedings.

Dethmers, C. J., and Kelly, Smith, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.