Jon R. SMITH, Plaintiff-Appellant,

v.

CITIES SERVICE OIL COMPANY, Defendant-Appellee.

Michael SMITH, by Jon R. Smith, Next Friend, Plaintiff-Appellant,

v.

CITIES SERVICE OIL COMPANY, Defendant-Appellee.

Nos. 14667, 14668.

United States Court of Appeals Seventh Circuit.

Feb. 25, 1965.

Rehearing Denied June 21, 1965.

Otto M. Bonahoom, David B. Keller, Fort Wayne, Ind., for appellant.

J. A. Bruggeman and William F. McNagny, Fort Wayne, Ind., for appellee.

Before CASTLE and SCHNACKENBERG, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

Plaintiffs prosecute appeals in these companion cases to review orders of the court below granting judgments for defendant notwithstanding the verdicts of a jury for the plaintiffs.

On July 27, 1960, the plaintiff, in appeal 14667, Jon R. Smith, experienced car trouble while traveling with his family toward Battle Creek, Michigan. Among the occupants of the car was the plaintiff in appeal 14668, Michael Smith, one of the minor sons of Jon. Mr. Smith stopped at a Sunoco Station, which was the first station reached upon entering Battle Creek. He was advised that the station had no mechanic and he was directed to a Cities Service station which was located across the street and operated by Richard Ramon. Mr. Smith then drove to the Cities Service station where Ramon undertook to repair the car.

The Smith family, having left the station after their arrival, returned in mid-afternoon. Ramon, still engaged in repairing the car, was pouring gasoline into the carburetor from an open can. Mrs. Smith and the Smith children were at the station in close proximity to where Ramon was working on the car. The car backfired, igniting the gas can in Ramon's hand. Ramon then dropped, or threw, the gas can and the burning contents thereof spilled down Michael's back.

These suits were then filed by Mr. Smith against the defendant, Cities Service Oil Company, for damages for personal injury to Michael and consequential damages suffered by Mr. Smith.

The suits were consolidated for trial. At the close of the evidence defendant moved for a directed verdict in each of the cases upon the ground that there was no evidence to prove that Ramon was an agent of defendant. The trial judge reserved his ruling upon the motion in each case and submitted the cases to the jury. The jury returned a verdict for the plaintiff and against the defendant in each case.

Upon defendant's motion for judgment notwithstanding the verdict, the trial judge held that the plaintiff in each case had failed to prove that Ramon was an agent of the defendant at the time of the injury to Michael. The judge then entered judgment for defendant in each case in accordance with that holding, and, alternatively, ordered a new trial in each case.

The only issue before us upon these appeals is whether the court erred in that ruling granting judgment for defendant notwithstanding the verdicts of the jury. That issue depends on the question whether Ramon in the operation of the service station in general, and in his undertaking to repair the Smith automobile in particular, acted as an agent of the defendant, Cities Service.

After a full review of the record, we are convinced that the ruling of the court below is correct.

The physical premises upon which the station was operated was owned by Cities Service and was equipped, among other things, with five Cities Service gasoline pumps.

On and prior to June, 1959, Ramon was employed as a spray painter by a Checker Cab Manufacturing Plant. Being dissatisfied with the employment, Ramon and his father, in response to a "For Lease" sign in the window of the station, initiated discussions with Cities Service representatives for the leasing of the station.

On June 26, 1959, a series of agreements were executed by Ramon and Cities Service under which Ramon undertook the operation of the station. The tenor of these agreements was: 1. A lease of the premises from Cities Service to Ramon for a term; 2. An agreement by Ramon to buy from defendant and sell Cities Service gasoline and lubricants; 3. A lease from Cities Service to Ramon of certain permanently fixed equipment in the station; 4. An agreement by Ramon to honor Cities Service credit cards; and, 5. An agreement by Ramon to purchase certain inventory and

equipment, the latter at depreciated value, which was located upon the premises of the station.

Plaintiff's argument that those contracts created anything other than a lessor-lessee relationship between Ramon and Cities Service rests largely upon the fact of the execution of supplemental leasing agreements from time to time between Ramon and the defendant. The station lease which Ramon signed provided that he would pay as rent for the station one cent for each gallon of gasoline sold at the station, payable at the time of delivery of the gasoline to the station, with a minimum monthly rental of $150.00 for each month. A rent rider was executed between the parties on June 26, 1959, which provided that from that date through September 25, 1959, rent for the station was to be $1.00 per month, that rent for the period from September 26, 1959 through November 25, 1959, was to be one cent per gallon of gasoline with a minimum of $25.00 per month and that the rent for the period of November 26, 1959 through January 25, 1960, was to be one cent per gallon with a minimum of $50.00 per month. Additional rent riders were executed from time to time between the parties which substantially reduced the rental below the provisions of the station lease.

During the period of time from December 26, 1959, through March 25, 1960, there was also in force a supplemental service station agreement between the parties under which the defendant guaranteed that Ramon would have net earnings of $335.00 per month from the sale of defendant's products and the operation of the station.

In addition to those supplemental agreements which were in effect from time to time, plaintiff stressed the facts that representatives of Cities Service called at the station with some regularity and that, from time to time they suggested to Ramon changes in methods of operation which Cities Service Company desired.

We think it clear from the evidence that no significance can be attached to the rent riders and supplemental agreements which were, from time to time, in force between Ramon and the defendant. The station was located in a transient area in an undesirable location. Between the period from December, 1952, and June, 1959, ten different operators had operated the station. Thus Ramon was the eleventh operator of the station during a period of less than seven years. The impecunious nature of the operation, coupled with defendant's desire that the station be operated as an outlet for its products, sufficiently explains the necessity for and the fact of the rent riders, without thereby derogating from the legal sufficiency of the leasing agreement to create a leasehold relationship between the parties. It is clear that the guaranteed net income agreement was a temporary arrangement carrying Ramon over the winter months of 1959 and 1960 when business at the station was traditionally poor.

During the period of time while Ramon operated the station he bought a substantial part of his products from the defendant. He also purchased certain tires, anti-freeze, parts and wax products from other suppliers, from which the defendant derived no profit whatsoever. Ramon fixed the hours of operation of the station, which were, in part, inconsistent with defendant's desires as to the hours when the station should be in operation. Ramon hired his own attendants and fixed the salaries and conditions for their employment. He kept his own books and records, employing his own system. His business was listed in the Battle Creek directory under the name of "Dick's Cities Service", and Ramon purchased his own Michigan sales tax license. He was not subjected by Cities Service Company to deduction for withholding tax, unemployment compensation or other deductions customarily associated with an employment relationship. Ramon operated an engine repair and auto mechanic's business in connection with the operation of the sta-

tion, for which he purchased parts from suppliers other than Cities Service. He set his own prices for the work performed and assumed the credit risks connected therewith. Defendant derived no profit from that operation. On April 10, 1961, Ramon filed a bankruptcy petition in the United States District Court for the Western District of Michigan, upon which he listed his business as being "Dick's Cities Service" and his debts incurred in the purchase of parts and other supplies for the station from suppliers other than defendant.

It is clear from the evidence that Ramon and Cities Service operated within the terms of the various agreements throughout the period of time when Ramon operated the station in question, except that Ramon did not purchase the minimum quantities of gasoline, etc., required by the lease. It is also clear that whenever any of the provisions of those agreements were altered, it was done by the execution of a supplemental written agreement thereto. Defendant had the right to cancel the lease agreement, but there is no evidence that it made any move or threat to do so until the lease was cancelled by mutual consent of the parties.

We agree with the trial court that reasonable men could not reach different conclusions in these cases upon the evidence and all inferences therefrom which are most favorable to the plaintiffs. We think it clear that an employment or agency relationship between Ramon and Cities Service was not proved. As the trial court said, "If an agency relationship can be found from the evidence in this case, then it would seem impossible to this court ever to have an independent lessee-operator of a service station."

Under the law of Michigan which controls these cases, the lessor of property is not liable for acts of his tenant which he has no right to control. Bluemer v. Saginaw Central Oil & Gas Service, Inc., 356 Mich. 399, 97 N.W.2d 90;

Brown v. Standard Oil Company, 309 Mich. 101, 14 N.W.2d 797.

There are in this case no indicia of an agency relationship between defendant and Ramon. The thinness of plaintiff's argument is apparent we think from the fact that it rests largely upon the facts that Ramon displayed defendant's brand signs, that he honored defendant's credit cards, defendant's agents from time to time made suggestions as to the operation of the station, and the fact that defendant had the right to terminate Ramon's lease. It is generally recognized that these factors are almost universal provisions of service station leasing agreements. The determinative question is the actual control of the operation of the business. We think it clear here that Ramon, not the defendant, had control of the general operation. We think it certain that Ramon had complete control of the specific incident of the repair of the Smith automobile in which it is not shown·that defendant derived any profit or benefit whatsoever.

Similar factual situations have been presented in a number of cases in which it has been held that an oil company lessor was not liable for injuries resulting from the operation of a leased station. These include Bluemer.v. Saginaw Central Oil & Gas Service, Inc., 356 Mich. 399, 97 N.W.2d 90, 92–94; Brown v. Standard Oil Company, 309 Mich. 101, 14 N.W.2d 797, 798; Elbers v. Standard Oil Company, 331 Ill.App. 207, 72 N.E. 2d 874, 880–881; Cities Service Oil Co. v. Kindt, 200 Okl. 64, 190 P.2d 1007, 1011; Reynolds v. Skelly Oil Co., 227 Iowa 163, 287 N.W. 823; Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632; Rothrock v. Roberson, 214 N.C. 26, 197 S.E. 568, 569. We think these cases, which are exemplary only, adequately dispose of the issues presented to us.

Having carefully considered all of the contentions and arguments of the plaintiff's, the judgments of the court below will be affirmed.

No. 14667 Affirmed.

No. 14668 Affirmed.