# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW A. JOHNSON,

      Plaintiff-Appellant,

UNPUBLISHED
May 17, 2018

v

GENERAL MOTORS LLC,

      Defendant/Third-Party Plaintiff-
      Appellee,

and

UNION PACIFIC DISTRIBUTION SERVICES,

      Third-Party Defendant.

No.  336250
Oakland Circuit Court
LC No.  2015-148114-NO

Before:  O'CONNELL, P.J., and HOEKSTRA and K. F. KELLY, JJ.

PER CURIAM.

In this slip and fall case, plaintiff Matthew Johnson appeals as of right the order granting summary disposition to defendant General Motors, LLC under MCR 2.116(C)(10).  Because the trial court did not err by granting summary disposition to defendant, we affirm.

Plaintiff is a truck driver who fell on the private roadway outside of defendant's Lake Orion assembly plant while working to move the axles on his truck to the rear position. Plaintiff's fall occurred on May 4, 2015, at approximately 5:00 a.m.  According to plaintiff's description of events, he was on his way to defendant's plant with a "hot" delivery, trying to meet a 5:00 a.m. deadline, and he pulled to the side of the road, to a "staging area," to work on his truck because defendant had a posted sign instructing drivers to slide their axles to the rear before entering the plant.  When plaintiff began the process to adjust his axles, he found that the lever under the truck appeared to be "froze or bound up" and it "didn't immediately come."  Rather than use his lubricants or "come along" tool, plaintiff gave the lever "a good tug."  As a result of this "good tug," the mechanism suddenly released, causing plaintiff to lurch rearward; and "combined with the shoddy footing," plaintiff slipped and fell.  According to plaintiff, he slipped on "sand and gravel on the road," which he described as the "normal detritus that would be on most roads."  Plaintiff broke his arm and has since undergone two surgeries.

-1-

Plaintiff filed the current lawsuit against defendant involving four claims: (1) premises liability, (2) nuisance, (3) intentional infliction of emotional distress (IIED), and (4) negligent infliction of emotional distress (NIED). Defendant filed a motion for summary disposition of all claims, which the trial court granted under MCR 2.116(C)(10). Plaintiff now appeals as of right.

## I. STANDARDS OF REVIEW

We review de novo a trial court's decision to grant a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact." *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 427; 760 NW2d 878 (2008). "A genuine issue of material fact exists when reasonable minds could differ on a material issue." *Braverman v Granger*, 303 Mich App 587, 596; 844 NW2d 485 (2014).

## II. PREMISES LIABILITY

On appeal, plaintiff argues that the trial court erred by dismissing his premises liability claim. According to plaintiff, the open and obvious doctrine does not apply to this case because the condition that caused his fall was unreasonably dangerous and effectively unavoidable. In making his argument, plaintiff lists a number of factors that allegedly contributed to the creation of an unreasonably dangerous hazard that was effectively unavoidable, including: (1) loose sand and gravel on the roadway, (2) inadequate lighting at the staging area, (3) an unsafe staging area that required plaintiff to stand in a lane of traffic while adjusting the axles on his truck, and (4) an unreasonable 5:00 a.m. delivery deadline that caused plaintiff to act in haste while adjusting the axles. At a minimum, plaintiff contends that questions of fact remain as to whether these issues constituted a defect on defendant's property that was unreasonably dangerous and effectively unavoidable. We disagree.

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). "With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). However, "landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land," *id*. at 459, and they do not have an obligation "to make ordinary conditions foolproof," *id*. at 460. Instead, a landowner's duty of care to an invitee is breached "when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id*.

Generally, a landowner does not have a duty to protect invitees from open and obvious dangers "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Bullard v Oakwood Annapolis Hosp*,

308 Mich App 403, 409; 864 NW2d 591 (2014) (citation and quotation marks omitted). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich at 461. However, even if a condition is open and obvious, "if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001). A dangerous condition may have "special aspects that give rise to liability in one of two ways: (1) the hazard is, in and of itself, unreasonably dangerous or (2) the hazard was rendered unreasonably dangerous because it was effectively unavoidable for the injured party." *Bullard*, 308 Mich App at 410.

In this case, viewed in a light most favorable to plaintiff, the record shows that, while working on his truck, plaintiff slipped and fell on sand and gravel on the roadway. According to plaintiff's own description, there was nothing unusual about the sand and gravel on the roadway. To the contrary, at his deposition, plaintiff clearly explained that he fell on "normal detritus that would be on most roads." Assuming that "normal detritus" constitutes a dangerous condition,[1] absent some special aspect, commonplace sand and gravel on the side of a roadway is the sort of "everyday occurrence" that ordinarily should be observed by a reasonably prudent person, and thus defendant would have no obligation to protect plaintiff from this type of open and obvious hazard. See *Lugo*, 464 Mich at 523.

Indeed, on appeal, plaintiff does not appear to dispute that, generally, the sand and gravel would be open and obvious. Rather, he argues on appeal that the poor lighting impaired his ability to see the road detritus. In support of his assertion that the lighting was inadequate, he offers (1) an affidavit from David Finch, a former security guard at the plant, who described the area as "pitch black" at 5:00 a.m., and (2) the report of Bradley Cook, an engineer who took light readings in the area and opined that the "illuminance levels" did "not meet maintained minimum levels." Based on Cook's report and Finch's affidavit, plaintiff maintains that questions of fact remain regarding the adequacy of the lighting. The fatal flaw with plaintiff's lighting argument is that he conceded at his deposition that "the lights per se" were not the "the problem."[2] Indeed, according to his own description of events, there were streetlights on the road, the lighting "wasn't remarkable either way," and he had a flashlight in his pocket, which he did not need to use. Given plaintiff's own testimony regarding the lighting and his ability to see while working on his truck, he cannot now rely on evidence from other individuals in an attempt to create a question of fact regarding the adequacy of the lighting at the time of his fall. See *Northern v Fedrigo*, 115 Mich App 239, 246; 320 NW2d 230 (1982) ("Plaintiff is bound by the statements in his deposition."). See also *Stefan v White*, 76 Mich App 654, 661; 257 NW2d 206 (1977). In

---

[1] Like the trial court, we question whether "normal detritus that would be on most roads" can be considered a "dangerous condition." See *Nash v Lewis*, 352 Mich 488, 492-493; 90 NW2d 480 (1958) (finding "grit and little pebbles" on a concrete landing outside entrance to a restaurant did not constitute an unsafe condition).

[2] Instead, in plaintiff's view, the "problem" was the "level of distraction and the schedule pressure."

short, given plaintiff's descriptions of the lighting at the time and place of his fall, the sand and gravel would have been discovered upon casual inspection by an average person of ordinary intelligence. *Hoffner*, 492 Mich at 461. Thus, the condition was open and obvious.

Contrary to plaintiff's arguments, there were also no special aspects that preclude application of the open and obvious doctrine. In terms of special aspects, there is no evidence that the risk of harm associated with the sand and gravel was "so unreasonably high that its presence was inexcusable, even in light of its open and obvious nature." *Hoffner*, 492 Mich at 473. In other words, the road detritus does not "present such a substantial risk of death or severe injury . . . that it would be unreasonably dangerous" in a manner comparable to a 30-foot pit. *Lugo*, 464 Mich at 518. Indeed, the evidence shows that, over a 15 year period, hundreds of thousands of trucks have adjusted their axles at this location without incident, and this fact strongly militates against a finding that sand or gravel on the roadway constituted an unreasonably dangerous condition. Cf. *Bullard*, 308 Mich App at 411.

There is also no indication that sand or gravel was effectively unavoidable. "Unavoidability is characterized by an *inability to be avoided,* an *inescapable* result, or the *inevitability* of a given outcome," meaning that "a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard." *Hoffner*, 492 Mich at 469. "As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id.* Here, plaintiff made the decision to stop his vehicle and confront any hazard posed by the staging area, including the sand and gravel. Plaintiff complains that he was on an urgent timeline to meet an "unreasonable" 5:00 a.m. deadline for a "hot" delivery[3] and he notes that defendant's policy is to require trucks to move their axles to the rear before entering the plant. But, the sand and gravel was not unavoidable simply because plaintiff confronted this hazard while on the property to make a delivery. See *Bullard*, 308 Mich App at 412 ("The mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard effectively unavoidable."). See also *Hoffner*, 492 Mich at 471-473. Notwithstanding plaintiff's desire to make his delivery on time, the fact remains that plaintiff was free to make a variety of choices that ultimately placed him in the sand and gravel. Plaintiff owned his own truck and he had the choice to refuse any runs from RoadOne (the company for which he was driving); but, he accepted this assignment. Further, while he did not believe the staging area provided a safe area to work on his truck, plaintiff did not call RoadOne or attempt to contact anyone at the plant for

---

[3] Plaintiff's argument regarding the significance of this deadline is somewhat convoluted. It is unclear whether plaintiff believes that the deadline made the hazard unavoidable or whether he believes that the deadline was itself some sort of defect. Clearly, the deadline is not itself a dangerous condition on the land and by itself this deadline would not support a premises liability action. See *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012) ("If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence[.]"). Plaintiff has not argued that deadline supports a claim of ordinary negligence, nor would such a claim be viable because plaintiff's injury arose from an allegedly dangerous condition on the land. See *id*.

assistance, nor did he refuse to make the delivery or refuse to adjust his axles at that location. Instead, plaintiff made the choice to stop his truck and adjust his axles. Faced with 600 feet of road, plaintiff chose the precise location at which he stopped his truck. Once he stopped and confronted the road detritus, he did not move his truck to another location, request assistance to clear the road detritus, or attempt to clear the road detritus himself (which Finch's affidavit indicates could be simply swept away). In short, plaintiff was faced with open and obvious road detritus, which he chose to confront, and there was nothing inescapable or inevitable about plaintiff's fall. Cf. *Bullard*, 308 Mich App at 412-413. Because the road detritus was open and obvious, and without any special aspects, defendant owed plaintiff no duty to protect him from the road detritus and thus plaintiff's premises liability claim is without merit. See *id*. at 410.

Aside from the road detritus, plaintiff more generally asserts that the staging area was an unsafe place to work on his truck because there were other purported defects at the staging area, including the inadequate lighting and the fact that he had to stand in a lane of traffic while working on his truck. With regard to the arrangement of the staging area, this allegedly dangerous condition is immaterial because, even if the configuration of the staging area constituted a breach of duty, the arrangement of the staging area was not the proximate cause of plaintiff's injury. See *Benton*, 270 Mich App at 440. Had plaintiff been hit by another truck while standing in a traffic lane to adjust his axles, the configuration of the staging area and the failure to segregate the staging area from traffic might support a claim that the configuration of the staging area caused plaintiff's injuries. Cf. *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 145; 565 NW2d 383 (1997) (concluding that liability could not be imposed where the alleged breach of duty was not a proximate cause of the injury in question). But, as it is, there were no other vehicles in sight while plaintiff worked on his truck and the configuration of the staging area does not establish that defendant should be held liable for plaintiff's fall on the road detritus. Likewise, with regard to the lighting at the staging area, as discussed, while plaintiff now claims the lighting was inadequate, plaintiff admitted at his deposition that the lighting was not "remarkable" and that it was not "the problem." Thus, he cannot establish that the lighting constituted a dangerous condition on the land or that that the lighting was a proximate cause of his fall.[4] Ultimately, plaintiff cannot show that he was injured because defendant failed to use reasonable care to protect him from unreasonable risks of harm posed by dangerous conditions on defendant's land. Thus, the trial court did not err by granting defendant's motion for summary disposition regarding plaintiff's premises liability claim.

III. NUISANCE

---

[4] Additionally, we note briefly that the configuration of the staging area as well as any potential problems with the lighting were open and obvious. See *Hoffner*, 492 Mich at 461; see also *Singerman*, 455 Mich at 141, 144. There were also no special aspects. Reasonable minds could not conclude that the configuration—on a private roadway leading up to a guard gate—presented "such a substantial risk of death or severe injury . . . that it would be unreasonably dangerous" to maintain this configuration. *Lugo*, 464 Mich at 518. See also *Bullard*, 308 Mich App at 411. Further, as discussed, plaintiff made the choice to confront the hazards at the staging area, and thus these defects cannot be considered effectively unavoidable. See *id*. at 412-413.

Reiterating the same complaints that formed the basis for his premises liability argument—i.e., an unsafe staging area and unreasonable deadline—plaintiff argues that his injuries were caused by a nuisance on defendant's property. According to plaintiff, questions of fact remain as to whether a nuisance existed and thus the trial court erred by granting defendant's motion for summary disposition. We disagree.

Typically, nuisance claims involve "a nontrespassory invasion of another's interest in the private use and enjoyment of land," *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992), or "the unreasonable interference with a right common to all members of the general public," *id*. at 304 n 8. However, in Michigan, there is also a line of cases that "have expanded 'nuisance' so that the term now applies to members of the public injured on the landowner's premises." *Rosario v Lansing*, 403 Mich 124, 140; 268 NW2d 230 (1978) (opinion by FITZGERALD, J.) (compiling cases). Under a nuisance theory, "liability is based on a dangerous, offensive, or hazardous condition of the land or on activities of similar characteristics which are conducted on the land." *Wagner v Regency Inn Corp*, 186 Mich App 158, 163; 463 NW2d 450 (1990). As noted by plaintiff, the law recognizes two classifications of nuisances: "nuisances per se or at law, and nuisances per accidens or in fact." *Bluemer v Saginaw Cent Oil & Gas Serv, Inc*, 356 Mich 399, 411; 97 NW2d 90 (1959) (quotation marks and citation omitted).

> A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or per accidens are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. [*Id*. (quotation marks and citation omitted).]

Additionally, the category of nuisance per accidens or in fact is further subdivided into two categories: "intentional nuisances and negligent nuisances." *Martin v State*, 129 Mich App 100, 108; 341 NW2d 239 (1983). "A negligent nuisance in fact is one that is created by the landowner's negligent acts, that is, a violation of some duty owed to the plaintiff which results in a nuisance." *Wagner*, 186 Mich App at 164. In contrast, "[a] nuisance in fact is intentional if the creator intends to bring about the conditions which are in fact found to be a nuisance." *Id*. "To establish intent, the plaintiff must show that when the defendant created or continued the condition causing the nuisance, he knew or must have known that the injury was substantially certain to follow, in other words, deliberate conduct." *Id*. Unless reasonable minds cannot differ, whether or not a particular thing or act is a nuisance per accidens is a question of fact. *Melendres v Soales*, 105 Mich App 73, 80; 306 NW2d 399 (1981). In comparison, "[w]hether an allegedly injurious condition constitutes a nuisance per se is a question of law." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 269; 761 NW2d 761 (2008).

In this case, plaintiff provides a lengthy quote of the law from *Rosario* and he then recounts his various complaints about defendant's staging area as well as the purported haste created by defendant's allegedly unreasonable deadline. However, plaintiff does not specifically identify whether his claim of nuisance is one for nuisance per se or nuisance accidens, nor does he specify whether his claim is for negligent nuisance or an intentional nuisance. By failing to

adequately brief the issue and explain the basis of his claim, plaintiff has abandoned his nuisance argument. See *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 517; 853 NW2d 481 (2014).

In any event, plaintiff's nuisance claim lacks merit. Clearly, plaintiff cannot show a nuisance per se; that is, he has not identified "an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Bluemer*, 356 Mich at 411 (quotation marks and citation omitted). In terms of nuisance per accidens, if plaintiff is attempting to show a negligent nuisance per accidens, he has not specified a duty that defendant has breached, and thus he cannot show a negligent nuisance. See *Wagner*, 186 Mich App at 164. Indeed, the only duty plaintiff identifies on appeal is the duty owed by defendant to invitees, which plaintiff identified in connection with his premises liability claim; and, as discussed *supra*, defendant did not breach this duty. Finally, assuming that plaintiff is claiming an intentional nuisance per accidens, his claim fails because he cannot show that defendant knew or should have known that the injury was "substantially certain" to follow from the road detritus. See *id*. Again, plaintiff slipped on sand or gravel, which he described as normal road detritus found on most roads. This purported defect is hardly "a menace dangerous to the public." *Bluemer*, 356 Mich at 413. It is true that the sand and gravel was located on the ground in an area where it can be expected that truckers will adjust their axles; but, the fact remains that literally hundreds of thousands of truckers have adjusted their axles in this area without incident. Viewing the evidence in a light most favorable to plaintiff, no reasonable mind could conclude that defendant knew or should have known that the presence of innocuous sand and gravel, of the kind found on roads everywhere, would be substantially certain to cause injury.[5] Thus, plaintiff's nuisance claim fails as a matter of law, and the trial court properly granted defendant's motion for summary disposition.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's IIED claim is premised on two basic assertions: (1) defendant imposed an unreasonable 5:00 a.m. deadline and "harassed" plaintiff with calls and texts while he was driving to the plant, and (2) personnel at the plant treated plaintiff outrageously after his fall by ignoring plaintiff's broken arm, failing to offer him medical assistance or report the injury as required by defendant's policies, and demanding that he continue to make the delivery to the plant. In plaintiff's view, this conduct supports a claim for IIED and the trial court erred by dismissing plaintiff's claim. We disagree.

"In order to state a claim of [IIED], a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 582; 603 NW2d 816 (1999). In considering whether conduct is extreme and outrageous, this Court has followed the approach set

---

[5] To the extent plaintiff complains of other purported defects at the staging area, such as the configuration or the lighting, as discussed, these conditions did not lead to plaintiff's fall, and thus these concerns cannot give rise to liability for defendants because none of plaintiff's injuries or losses are attributable to these conditions. See *Bluemer*, 356 Mich at 413-414.

forth in the Restatement Torts, 2d, § 46. See *Bernhardt v Ingham Regl Med Ctr*, 249 Mich App 274, 278; 641 NW2d 868 (2002). This "formidable threshold for extreme and outrageous conduct" provides:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. [*Atkinson v Farley*, 171 Mich App 784, 789; 431 NW2d 95 (1988) (quotation marks and citation omitted.)]

Unless reasonable minds could differ, whether the alleged conduct may be regarded as extreme and outrageous is a question of law for the Court. *Teadt*, 237 Mich App at 582.

Here, viewing the evidence in a light most favorable to plaintiff, reasonable minds could not conclude that defendant or personnel at defendant's plant engaged in extreme and outrageous conduct. First, plaintiff claims that defendant behaved outrageously by imposing an unreasonable deadline and "harassing" plaintiff about his delivery time. Even assuming that such conduct by RoadOne and other entities can be attributed to *defendant*, such conduct amounts to petty behavior and trivialities that in no way rises to the level of extreme and outrageous conduct. See *Atkinson*, 171 Mich App at 789. Second, plaintiff asserts that personnel at the plant treated him callously by failing to provide medical assistance and instead ordering him to move his truck and continue with the delivery. A deliberate failure to aid an injured person and a demand that the injured person continue with a delivery could certainly be characterized as unkind and inconsiderate; but, inconsiderate and unkind behavior does not give rise to a claim for IIED. See *id*.

In attempting to establish that the personnel at the plant were more than simply inconsiderate or unkind, plaintiff asserts that his injury was so serious, and his need for help so

dire, that it was outrageous not to provide medical assistance and to instead insist that plaintiff continue with his delivery. However, plaintiff's argument is entirely disingenuous in light of plaintiff's own description of events.[6] That is, plaintiff's own behavior belies his claim that he was in the midst of an obvious and dire medical emergency. For instance, after his fall, plaintiff made several phone calls from the plant, but none of them were to 911 or medical personnel. He called his wife; but, she did not call 911 or jump in the car to come to his aid. Further, despite his assertions that he was obviously and desperately in need of help, he drove his truck all the way from Lake Orion to Lincoln Park. In Lincoln Park, RoadOne staff offered to call an ambulance, but plaintiff refused the offer, opting instead to drive himself home. Given that plaintiff did not treat his injury as a serious medical emergency, that he continued to drive his truck, and that he refused RoadOne's offer of medical assistance, reasonable minds cannot conclude that personnel at the plant acted beyond all possible bounds of decency by failing to obtain medical assistance for plaintiff or expecting plaintiff to continue with the delivery. Cf. *Schliewe v Toro*, 138 Fed App'x 715, 723 (CA 6, 2005) (rejecting IIED claim premised on police's purported failure to timely obtain medical assistance for arrestee because, even though officers knew he needed some medical treatment, "his condition was not an obvious medical emergency"). Because plaintiff cannot show that defendant engaged in extreme and outrageous conduct, his IIED claim must fail and the trial court properly granted defendant's motion for summary disposition.

## V. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Finally, plaintiff argues that the trial court erred by dismissing his claim for NIED. Specifically, in a cursory fashion, plaintiff asserts that his NIED claim should not be dismissed because, if personnel at the plant did not intentionally disregard plaintiff's need for medical assistance, their conduct was at least negligent. Incorrectly, plaintiff's argument appears to presume that NIED is analogous to IIED with the only distinction being whether the actor intended to cause emotional distress or whether the actor's negligence caused emotional distress. Contrary to plaintiff's argument, there is no cause of action in Michigan that allows a plaintiff to recover damages simply because a defendant negligently caused emotional distress. See *Duran v Detroit News, Inc*, 200 Mich App 622, 629; 504 NW2d 715 (1993); *Gillespie v Battle Creek*, 100 F Supp 3d 623, 634 (WD Mich, 2015).

Instead, primarily, Michigan recognizes the tort of NIED "when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result." *Teadt*, 237 Mich App 567, 581; 603 NW2d at 823. See also *Wargelin v Sisters of Mercy Health Corp*, 149 Mich

---

[6] On appeal, defendant argues that plaintiff's claim for IIED should fail because his version of events is uncorroborated, self-serving, and somewhat inconsistent with Finch's recollection of events. However, these attacks on the credibility of plaintiff's description of events are misplaced in the context of a motion for summary disposition because courts "may not make findings of fact or weigh credibility in deciding a motion for summary disposition." *In re Handelsman*, 266 Mich App 433, 437; 702 NW2d 641 (2005). Nevertheless, even assuming that plaintiff told personnel that he "broke" his arm, it is clear that his IIED claims are without merit.

App 75, 81; 385 NW2d 732 (1986). Plaintiff did not witness injury to a third party, and thus such a claim of NIED is obviously inapplicable. Aside from this bystander form of NIED, Michigan allows recovery for emotional distress under a negligence theory only (1) as "parasitic damages" when the defendant's negligence results in an immediate physical injury, *Daley v LaCroix*, 384 Mich 4, 8; 179 NW2d 390 (1970), or (2) in the absence of an actual physical impact, when a plaintiff can establish a definite and objective physical manifestation of emotional distress, *Henry v Dow Chem Co*, 473 Mich 63, 79 & n 9; 701 NW2d 684 (2005); *Daley*, 384 Mich at 12-13. Here, plaintiff suffered a physical injury when he fell and broke his arm; but, as discussed, he cannot establish that defendant is liable for his fall and thus he is not entitled to recover for emotional distress caused by his fall and the resulting physical injury. See *Daley*, 384 Mich at 8; *Benton*, 270 Mich App at 440. Aside from his physical injury, plaintiff alleges that negligence by plant personnel in failing to respond to his injury caused him emotional distress. This claim also fails. First, his cursory argument fails to explain in any detail what duty personnel at defendant's plant owed plaintiff and how they breached that duty, and we consider this insufficiently briefed argument to be abandoned. See *Huntington*, 305 Mich App at 517. Second, even assuming negligence, plaintiff has not identified a physical manifestation of emotional distress, and thus he cannot prevail in a negligence action premised on emotional distress. See *Henry*, 473 Mich at 79 & n 9. Accordingly, the trial court did not err by dismissing plaintiff's NIED claim.

Affirmed. Having prevailed in full, defendant may tax costs pursuant to MCR 7.219.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly